# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TERRI MICHELLE REYLEK, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | C.A. No. K22M-07-010 NEP |
| | ) | |
| ANTHONY J. ALBENCE, | ) | |
| | ) | |
| Respondent. | ) | |

Submitted: April 17, 2023
Decided:  July 19, 2023

## <u>MEMORANDUM OPINION AND ORDER</u>

*Upon Respondent's Motion to Dismiss Petitioner's Amended Petition*
**GRANTED IN PART AND DEFERRED IN PART**

Terri Michelle Reylek, Dover, Delaware, *Pro Se Petitioner*.

Nicholas D. Picollelli, Jr., Deputy Attorney General, Department of Justice, Wilmington, Delaware, *Attorney for Respondent*.

**Primos, J.**

Before this Court is the motion to dismiss filed by Respondent Anthony J. Albence, State Election Commissioner (hereinafter the "Election Commissioner"), seeking dismissal of the Amended Petition for Writ of Mandamus (hereinafter the "Amended Petition") filed pro se by Petitioner Terri Michelle Reylek (hereinafter "Reylek"). For the reasons that follow, the Motion to Dismiss is **GRANTED IN PART AND DEFERRED IN PART**. Reylek's Amended Petition is **DISMISSED** with respect to the requests for mandamus relief—Counts 2 through 5 of the Amended Petition.[1] Decision is **DEFERRED** with respect to dismissal of Count 1—the request for a declaratory judgment—pending supplemental briefing as outlined at the close of this Memorandum Opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

Pursuant to 15 *Del. C.* § 5000A, "[i]n any general, special, or primary elections, an electronic voting system must be used and must comply with the requirements of this chapter," i.e., the requirements of Chapter 50A of Title 15 of the Delaware Code. Reylek, a registered voter in the State of Delaware, seeks mandamus and declaratory relief on the basis that Delaware's electronic voting systems are not properly certified pursuant to 15 *Del. C.* § 5001A, which provides in relevant part as follows:

> A voting device or system purchased by the State must be certified by the United States Election Assistance Commission, or designated federal authority, as meeting or exceeding the voluntary voting systems standards or guidelines as promulgated by the United States Election Assistance Commission, or designated federal authority, before delivery to and acceptance by the State.[2]

On January 10, 2023, the Court dismissed Reylek's original petition for mandamus, in which she sought, in various ways, to prevent the further use of the

---

[1] The Court refers to each prayer for relief in the Amended Petition as a separate "Count," although the Amended Petition does not differentiate the factual basis for each prayer for relief.
[2] 15 *Del. C.* § 5001A(c).

allegedly uncertified electronic voting systems in Delaware elections.[3]  The Court incorporates by reference the Factual and Procedural Background in the Memorandum Opinion and Order dismissing that Petition.[4]

The factual allegations in the Amended Petition substantively mirror the original, which the Court previously summarized as follows:

> The Petition alleges that Delaware's electronic voting machines are not properly certified by the United States Election Assistance Commission ("EAC"), in violation of 15 *Del. C.* § 5001A. The crux of the Petition's allegation appears to be that the laboratory that tested the voting machines, Pro V & V, Inc., was not properly accredited because 1) the EAC Certificate of Accreditation was signed by the EAC's Executive Director, rather than by the EAC's Chairperson, in violation of a provision of a Testing & Certification Program Manual promulgated by the EAC, in 2015 and 2) the proper procedures were not followed to reaccredit the lab after a lapse in its accreditation.[5]

In other words, Reylek's primary contention is that the voting system test laboratory ("VSTL") that tested Delaware's electronic voting systems was not properly accredited with the EAC.

The Court never addressed those allegations on the merits, holding only that the requests for relief (several of which were explicitly phrased as requests for injunctive relief), were outside of this Court's authority on a petition for mandamus.[6]

---

[3] *See Reylek v. Albence*, 2023 WL 142522, at *1, *7 (Del. Super. Jan. 10, 2023).  The Court had previously denied Reylek's motion to expedite proceedings prior to the November 2022 election, finding that a petition for mandamus was not an appropriate vehicle to obtain prohibitory, injunctive relief to affect a then-upcoming election.  *See Reylek v. Albence*, 2022 WL 13785951, at *2 (Del. Super. Oct. 24, 2022).

[4] *See Reylek*, 2023 WL 142522, at *1–2.

[5] *Id.* at *1 (internal footnotes and citations omitted).  For an explanation of the certification and accreditation functions of the EAC, and a summary of similar allegations regarding, *inter alia*, the validity of voting system certifications by Pro V & V, *see Graeff v. United States Election Assistance Comm'n*, 2023 WL 2424267, at *2–3 (E.D. Mo. Mar. 9, 2023).

[6] *Reylek*, 2023 WL 142522, at *6.  Both of the Election Commissioner's motions to dismiss have been directed at the adequacy of the relief requested, and neither has addressed the factual or legal merits of Reylek's allegations.

The dismissal was without prejudice, and Reylek was given an opportunity to file an amended petition.[7]  On January 20, 2023, Reylek filed an Amended Petition for a Writ of Mandamus, with essentially the same factual allegations but modified requests for relief.[8]  Specifically, Reylek rephrased the mandamus relief requested, invoked one new statutory basis for mandamus relief, and added a declaratory judgment count.

First, while Reylek's pleading is styled as a petition for a writ of mandamus, Count 1 of the Amended Petition requests a "Declaratory Judgement that NO voting systems/machines are legal for use in Delaware elections unless they are legally certified pursuant to Title 15, § 5000A, 5001A(11)-(C), 29 Del. C. § 10001, and meet all the requirements outlined in the Help America Vote Act (HAVA) of 2002, as long as Delaware Code mandates compliance [sic]."[9]  Counts 2 through 4 request mandamus relief compelling the Election Commissioner to 1) "act pursuant to Title 15, § 5000A, 5001A(11)-(C), 29 Del. C. § 10001 to ONLY employ valid and legally certified voting system/machines within the State of Delaware" [sic]; 2) "uphold the Constitution of the State of Delaware and the Constitution of the United States . . . [i]ncluding the US Constitution, Amendments 1 & 14, the Help America Vote Act (HAVA) of 2002, and Delaware Titles 15 and 29"; and 3) "act in pursuant to [sic] Title 15, Chapter 51 § 5102(b) by notifying the Delaware Attorney General of all violations" of Title 15 of the Delaware Code.[10]  Finally, in Count 5, Reylek asks the Court "to compel the State Attorney General, Kathy Jennings, to act in pursuant to

---

[7] *Id.* at *6–7.

[8] Am. Pet. for Writ of Mandamus (D.I. 21) [hereinafter "Am. Pet."].

[9] *Id.* at 30.  The Help America Vote Act ("HAVA"), specifically 52 U.S.C. § 20971, relates to Reylek's allegations because it outlines the EAC's role in certification and accreditation of voting systems and provides for the optional use of those services by the states.  *See Reylek*, 2023 WL 142522, at *1 n.2.  It is not clear why Reylek continues to cite 29 *Del. C.* § 10001, which is the Declaration of Policy for Delaware's Freedom of Information Act ("FOIA").  No request for production has been made under FOIA in the Amended Petition.

[10] Am. Pet. at 30–31.

4

[sic] Title 15, Chapter 51 § 5102(b), by prosecuting all violations" of Title 15.[11] Attorney General Jennings is not a party to this action.

On February 7, 2023, the Election Commissioner moved to dismiss the Amended Petition, arguing once again that Reylek had failed to request any valid relief suitable for a mandamus action.[12] Reylek filed a response to the motion to dismiss on February 21, 2023.[13] On March 8, 2023, the Court sent a letter to the parties requesting supplemental briefing on whether the "actual controversy" prerequisite for a declaratory judgment action had been met and whether the Court, in its discretion, should entertain such an action on the facts alleged.[14] Reylek and the Election Commissioner filed their supplemental briefs on March 24, 2023, and March 28, 2023, respectively.[15] Reylek filed a response to the Election Commissioner's supplemental brief on April 3, 2023,[16] and the Election Commissioner filed a response to Reylek's supplemental brief on April 6, 2023.[17]

## STANDARD OF REVIEW

When the Court considers a motion to dismiss for failure to state a claim pursuant to Superior Court Civil Rule 12(b)(6), "(i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are well-pleaded if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and [(iv)] dismissal is inappropriate

---

[11] *Id.* at 32. Counts 6 and 7 duplicate the requests in the original petition for a "speedy hearing" and any other relief the Court deems necessary. *Id.*

[12] Resp't's Mot. to Dismiss Terri Michelle Reylek's Am. Pet. for a Writ of Mandamus (D.I. 24) [hereinafter "Mot. to Dismiss"].

[13] Reply to Resp't's Mot. to Dismiss of Terri Michelle Reylek's Am. Pet. (D.I. 26) [hereinafter "Resp. to Mot. to Dismiss"].

[14] D.I. 27.

[15] Suppl. Br. Addressing Decl. J. Relief (D.I. 28) [hereinafter "Pet'r's Suppl. Br."]; Resp't's Suppl. Br. in Support of his Mot. to Dismiss Terri Michelle Reylek's Am. Pet. for a Writ of Mandamus (D.I. 29) [hereinafter "Resp't's Suppl. Br."].

[16] Reply to Resp't's Suppl. Br. Addressing Decl. J. Relief (D.I. 30).

[17] Resp't's Resp. to Terri Michelle Reylek's Suppl. Br. Addressing Decl. J. Relief (D.I. 31).

unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[18]

In addition, "[a] *pro se* pleading is judged by a 'less stringent standard' than a pleading or document filed by an attorney."[19] However, "[t]here is no different set of rules for *pro se* plaintiffs, and the trial court should not sacrifice the orderly and efficient administration of justice to accommodate an unrepresented plaintiff."[20]

Finally, "[w]henever it appears by suggestion of the parties or otherwise that the Court lacks jurisdiction of the subject matter, the Court shall dismiss the action."[21] "Notably, '[t]he burden of establishing the Court's subject matter jurisdiction rests with the party seeking the Court's intervention.'"[22]

## ANALYSIS

The Court initially addresses the mandamus counts in the Amended Petition before turning to the declaratory judgment count. First, the Court will dismiss the counts asking for a writ of mandamus compelling the Election Commissioner to use only certified voting systems and to uphold the federal and Delaware constitutions and the Delaware Code for reasons similar to those given in its previous Memorandum Opinion and Order. As for the mandamus counts predicated on 15 *Del. C.* § 5102, the Court finds that the statute does not establish a clear legal right to the performance of a ministerial duty either to report or to prosecute the alleged

---

[18] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (internal citations and quotation marks omitted).

[19] *Mason v. Dover Fed. Credit Union*, 2018 WL 4026554, at *2 (Del. Super. Aug. 22, 2018) (quoting *Johnson v. State*, 442 A.2d 1362, 1364 (Del. 1982)).

[20] *Draper v. Med. Ctr. of Delaware*, 767 A.2d 796, 799 (Del. 2001).

[21] Super. Ct. Civ. R. 12(h)(3).

[22] *B&B Fin. Servs., LLC v. RFGV Festivals, LLC*, 2019 WL 2006487, at *3 (Del. Super. May 2, 2019) (alteration in original) (quoting *Airbase Carpet Mart, Inc. v. AYA Associates, Inc.,* 2015 WL 9302894, at *2 (Del. Super. Dec. 15, 2015)).

statutory violations. Accordingly, for reasons explained more fully herein, the mandamus counts for relief shall be dismissed.

The declaratory judgment count presents a closer question. The Court is not persuaded by the Election Commissioner's arguments that Reylek cannot obtain prohibitive relief via a declaratory judgment action or that the matter is unripe for decision. However, the Court requires supplemental briefing on whether 15 *Del. C.* §§ 5000A and 5001A create an implied private right of action to sustain an actual controversy for declaratory judgment purposes. Decision on the declaratory judgment count is accordingly deferred.

## I. Writ of Mandamus

29 *Del. C.* § 10143 provides that "[a]ny person aggrieved by the failure of an agency to take action required of it, by law, may bring an action in the Court for an appropriate writ of mandamus." "Mandamus is an exceptional remedy that is not available as a matter of right, but rather, is issued only according to the 'sound judicial discretion' of the court in which mandamus is sought."[23] It is only appropriate for a Court to grant a writ of mandamus "when a plaintiff is able to establish a clear legal right to the performance of a non-discretionary duty."[24] "[W]hen directed to an administrative agency or public official, mandamus will issue only to require performance of a clear legal or ministerial duty[,]" i.e., "the duty must be prescribed with such precision and certainty that nothing is left to discretion or judgment."[25] The Court has "broad discretion" to deny a petition where, *inter alia*, the legal duty is not clear, the petitioner has another remedy available, or granting the writ would be either inequitable or useless.[26]

---

[23] *Brittingham v. Town of Georgetown*, 113 A.3d 519, 524 (Del. 2015) (internal citation omitted) (quoting *Ingersoll v. Rollins Broad. of Del., Inc.,* 272 A.2d 336, 338 (Del. 1970)).
[24] *Darby v. New Castle Gunning Bedford Ed. Ass'n*, 336 A.2d 209, 210 (Del. 1975).
[25] *Guy v. Greenhouse*, 637 A.2d 827, 1993 WL 557938, at *1 (Del. 1993) (TABLE).
[26] *Brittingham*, 113 A.3d at 524–25.

First, the Court agrees with the Election Commissioner that Count 2 of the Amended Petition is substantively similar to the request for prohibitory relief previously rejected by the Court. The purported distinction between prohibiting the Election Commissioner from using uncertified electronic voting systems and requiring him to use *only* certified electronic voting systems is a matter of phrasing, not of substance. The Court has already explained that "the problem is not how the request is phrased, but the nature of the relief sought."[27] In light of Reylek's allegation that there are no properly certified electronic voting systems currently available for use in the State of Delaware, the clear implication of Count 2 is that it would bar the Election Commissioner from using electronic voting systems in an upcoming election. This remains prohibitive relief unsuitable for a mandamus action, and the Court declines to reconsider a relief request already dismissed in a previous decision.

Likewise, the Court has already explained that it cannot grant mandamus relief compelling a public official to uphold generally the state or federal constitution, which Reylek asks for again in Count 3 of the Amended Petition. While Reylek has supplemented this request with references to specific constitutional articles and amendments, the request still amounts to a writ ordering the Election Commissioner to obey the law. "While '[p]ublic officials are, of course, expected to obey the law,' an order to do so 'does not constitute the specific, clear cut command required in a writ of mandamus.'"[28] Her additional references to the Help America Vote Act (HAVA) and Titles 15 and 29 of the Delaware Code are also

---

[27] *See Reylek*, 2023 WL 142522, at *3 n.31 ("Whether the request is phrased as an order to 'cease use of all illegal ES&S voting systems/machines,' . . . or 'to ONLY employ valid and legally certified voting system[s]/machines,' . . . the object of the suit was to prevent Respondent from using the electronic voting machines currently owned by the State of Delaware in an election.")

[28] *Id.* at *6 (alteration in original) (quoting *Pleasonton v. Hugg*, 2010 WL 5313228, at *1 (Del. Super. Nov. 29, 2010)).

8

unavailing. A writ of mandamus directing the Election Commissioner to uphold, for example, all of Title 15 of the Delaware Code would go far beyond rectifying Reylek's specific alleged violations. Reylek nonetheless argues that, in light of her detailed allegations, "the relief request is very specific."[29] However, in order to obtain mandamus relief, a petitioner must identify a duty "prescribed with such precision and certainty that nothing is left to discretion or judgment."[30] Alleging a statutory violation, and asserting that a particular state official is responsible for correcting said violation, is not equivalent to identifying a clear, ministerial duty to be performed by a public official.

Counts 4 and 5 of the Amended Petition are both rooted in 15 *Del. C.* § 5102, which provides in subsection (a) that the "Attorney General shall immediately prosecute to final judgment all complaints which may be made of a violation of this title" and in subsection (b) that the "Department of Elections and all election officers shall notify the Attorney General of all violations of this title." In Count 4, Reylek seeks a writ of mandamus compelling the Election Commissioner to act pursuant to 15 *Del. C.* § 5102(b) "by notifying the Delaware Attorney General of all violations to this title [sic]."[31] Construed liberally, what she seeks is a writ of mandamus directing the Election Commissioner to notify the Delaware Attorney General of the specific allegation that the voting systems are uncertified. Assuming *arguendo* that the State Election Commissioner has a mandatory duty to report all known violations of Title 15 to the Attorney General,[32] it does not follow that Reylek has a "clear legal

---

[29] Resp. to Mot. to Dismiss at 5.

[30] *Greenhouse*, 1993 WL 557938, at *1.

[31] Am. Pet. at 30.

[32] "Election officers" are defined in Title 15 to include "the inspector of election, the 2 judges of election and the clerks of election who are appointed for each election district" to serve in polling places. 15 *Del. C.* §§ 101(9) and 4702. Reylek argues that the Election Commissioner serves as an ex oficio member of the State Board of Elections, which is a voting faction within the Department of Elections, and that he therefore is "included in the group of officials that SHALL notify the Attorney General." Resp. to Mot. to Dismiss at 5.

right" to have her *alleged* violations relayed to the Attorney General via the State Election Commissioner. The Court previously held that Reylek had failed to establish a clear legal right to compel the Election Commissioner to investigate her allegations.[33] Moreover, nothing prevents an individual citizen such as Reylek from relaying her own allegations directly to the Attorney General, and any purported right to have the State Election Commissioner do so in her stead is doubtful at best. "If the right be doubtful, mandamus will not lie."[34]

Finally, in Count 5, Reylek seeks a writ of mandamus compelling Attorney General Kathy Jennings to prosecute all violations of Title 15.[35] First, the Court notes that Reylek has not attempted to add the Attorney General to this action as a defendant.[36] Moreover, Reylek has not identified an alleged offense that the Attorney General could prosecute to final judgment. Chapter 51 of Title 15, titled "Criminal Offenses," enumerates a variety of specific election-related offenses. Reylek's allegations, however, are based entirely in Chapter 50A (titled "Electronic Voting Systems"), which—at least on its face—does not carry any civil or criminal penalties. In any event, it is far from clear whom Reylek wants the attorney general to prosecute for these alleged violations.

---

[33] *Reylek*, 2023 WL 142522, at *5.

[34] *State ex rel. Lyons v. McDowell*, 57 A.2d 94, 97 (Del. 1947).

[35] Am. Pet. at 32.

[36] Reylek argues that the Attorney General is an "interested party or third party to this case" and cites, *inter alia*, Superior Court Civil Rule 8(a) for the proposition that she can proceed with a third-party claim without formally adding that party to the case. Resp. to Mot. to Dismiss at 5–6. This argument reflects a misunderstanding of the nature of a third-party claim. "Superior Court Civil Rule 14(a) allows a defendant, as a third-party plaintiff, to file a claim against a non-party 'who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff.'" *Two Farms, Inc. v. Davis, Bowen & Friedel, Inc.*, 2018 WL 6721379, at *2 (Del. Super. Dec. 19, 2018). "[O]nce a proper third-party claim is stated under Rule 14(a), a third-party plaintiff may advance any other claims it may have against the third-party defendant pursuant to Superior Court Civil Rule 18." *Id.* at *4. If Reylek seeks an order directly compelling action from the Attorney General (as opposed to indirectly affecting the Attorney General), she should have joined her to the action as a defendant pursuant to Superior Court Civil Rule 20, which provides for the permissive joinder of parties.

10

With respect to both Counts 4 and 5, the Court observes that the only purpose of invoking 15 *Del. C.* § 5102(b) within a mandamus action is to obtain a judicial determination that a violation in fact occurred in the first place. Reylek's requests, across both her original and amended petitions, implicate broad powers of executive branch officials to investigate, report, and prosecute violations of law. A writ of mandamus, however, is appropriate only to compel the performance of clear, ministerial duties. Its purpose is not to encroach on these executive functions by conducting judicial proceedings (e.g., an evidentiary hearing) on whether a violation of Title 15 has occurred, so that the Court can then order executive branch officials to "report" or "prosecute" violations that have already been proven to the Court's satisfaction. Considerations of both judicial economy and separation of powers weigh heavily against such a broad exercise of the Court's mandamus power.

For the reasons above, the Court concludes that Counts 2 through 5 of the Amended Petition fail to state a claim upon which mandamus relief can be granted, and those counts are therefore **DISMISSED**.

## II.    Declaratory Judgment

Reylek's remaining relief request is for a "Declaratory Judgement that NO voting systems/machines are legal for use in Delaware elections unless they are legally certified pursuant to Title 15, § 5000A, 5001A(11)-(C), 29 Del. C. § 10001, and meet all the requirements outlined in the Help America Vote Act (HAVA) of 2002, as long as Delaware Code mandates compliance [sic]."[37] At the outset, the Court notes that the fact that a pro se pleading is styled as a petition for mandamus does not prevent the Court from considering an otherwise properly pleaded request for declaratory relief. For this reason, the Court finds unpersuasive the Election Commissioner's argument that Count 1 should be dismissed merely because the

---

[37] Am. Pet. at 30.

11

Court already held that a similar request was "outside its mandamus jurisdiction, and . . . should do so again here."[38]

Pursuant to the Declaratory Judgment Act, 10 *Del. C.* §§ 6501–6513, this Court has the power to "declare rights, status and other legal relations whether or not further relief is or could be claimed."[39] "The declaration may be either affirmative or negative in form and effect, and such declaration shall have the force and effect of a final judgment or decree."[40] The "purpose of the Declaratory Judgment Act is to enable the courts to adjudicate a controversy prior to the time when a remedy is traditionally available and, thus, to advance to stage [sic] at which a matter is traditionally justiciable."[41]

Before entertaining a declaratory judgment action, a Delaware court must first make a threshold determination that an "actual controversy" exists.[42] An "actual controversy" has four elements:

> (1) It must be a controversy involving the rights or other legal relations of the party seeking declaratory relief; (2) it must be a controversy in which the claim of right or other legal interest is asserted against one who has an interest in contesting the claim; (3) the controversy must be between parties whose interests are real and adverse; (4) the issue involved in the controversy must be ripe for judicial determination.[43]

Since the actual controversy requirement is jurisdictional, Reylek bears the burden of establishing all four elements, and it cannot be waived by agreement or concession of the parties.

---

[38] Mot. to Dismiss at 4 (internal citation omitted).

[39] 10 *Del. C.* § 6501.

[40] *Id.*

[41] *Diebold Computer Leasing, Inc. v. Commercial Credit Corp.*, 267 A.2d 586, 591–92 (Del. 1970).

[42] *XL Specialty Ins. Co. v. WMI Liquidating Tr.*, 93 A.3d 1208, 1216 (Del. 2014) (quoting *Gannett Co., Inc. v. Bd. of Managers of the Delaware Criminal Justice Info. Sys.,* 840 A.2d 1232, 1237 (Del. 2003)).

[43] *Id.* at 1217 (quoting *Stroud v. Milliken Enterprises, Inc.*, 552 A.2d 476, 479–80 (Del. 1989)).

Even if an actual controversy exists, a trial court still "has discretion in determining whether to entertain a declaratory judgment action."[44] "This discretion should be liberally exercised in order to advance the remedial purpose of the Act."[45] However, the Court nonetheless "may refuse to enter a declaratory judgment when granting such a judgment 'will not terminate the uncertainty or controversy giving rise to the proceeding.'"[46] Finally, while the "mere availability of another adequate remedy does not in and of itself weigh against the giving of declaratory relief," the Court may properly decline to entertain a declaratory judgment action where another remedy would be more "effective or efficient."[47]

As explained *supra*, the Court requested supplemental briefing from the parties on whether an actual controversy exists in this case, and on whether the Court should exercise its discretion to entertain this action. Reylek's submission addressed all four prongs of the actual controversy test, arguing that 1) the controversy involves her "legal right to vote in a verifiably secure way" and "the legality of the machines/systems [she is] required to use to exercise [her] right to vote"; 2) the Election Commissioner's "lack of action and/or response" demonstrates his interest in contesting the claim; 3) the Election Commissioner's silence shows that his interest is "real and adverse" to Reylek's; and 4) the action is ripe because it "pertains to current law, violated rights, future violations, and facts."[48] The Election

---

[44] *Id.* at 1216; *see also Ramos v. Headstrong Grp., Inc.*, 2023 WL 315333, at *1 (Del. Super. Jan. 19, 2023) ("The grant of a declaratory judgment in Superior Court is a matter within the sound discretion of the Court.").

[45] *Burris v. Cross*, 583 A.2d 1364, 1372 (Del. Super. 1990); *see also* 10 *Del. C.* § 6512 ("This chapter is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered.").

[46] *Delaware State Sportsmen's Ass'n v. Garvin*, 196 A.3d 1254, 1260 (Del. Super. 2018) (quoting 10 *Del. C.* § 6506).

[47] *Clemente v. Greyhound Corp.*, 155 A.2d 316, 321 (Del. Super. 1959).

[48] Pet'r's Suppl. Br. at 4–6.

13

Commissioner's supplemental brief addresses only the fourth prong of the actual controversy test, arguing that the action is not yet ripe because 1) the Amended Petition fails to allege that there is "an imminent Delaware election that will use the allegedly uncertified voting machines" and 2) the machines "may very well be properly certified or replaced with certified machines between now and an unknown future election date."[49]

First, the Court is not persuaded by the Election Commissioner's argument that the action is unripe. "A case is ripe for judicial review when the dispute has matured to the point where the plaintiff has suffered or will imminently suffer an injury."[50] The Court may hear a dispute only if, based upon a "'common sense assessment' of the facts, . . . 'litigation sooner or later appears to be unavoidable and where the material facts are static.'"[51] Decision is premature if the "facts are still unknown or changing," lest the Court risk "offering only advice and a premature binding decision."[52]

Here, both a liberal construction of the Amended Petition[53] and a common sense assessment of the facts support a conclusion that the action is ripe (insofar as an actual controversy otherwise exists). Despite Reylek's failure to plead a specific upcoming election date, it cannot reasonably be disputed that the State of Delaware will continue to hold elections on a regular basis, and that it will follow its statutory mandate to use electronic voting systems in those elections.[54] The Amended Petition alleges that Delaware's electronic voting systems are not legally certified and that

---

[49] Resp't's Suppl. Br. at 4. In their respective replies, the parties debated whether a school board election scheduled for May of 2023, now past, made the action ripe for review.
[50] *Town of Cheswold v. Cent. Delaware Bus. Park*, 188 A.3d 810, 816 (Del. 2018).
[51] *Id.* (quoting *XL Specialty*, 93 A.3d at 1217).
[52] *Id.*
[53] *See Tigani v. Fisher Dev. Co.*, 2022 WL 1039969, at *2 (Del. Super. Apr. 6, 2022) ("*Pro se* pleadings generally are construed more liberally than counseled ones.").
[54] 15 *Del. C.* § 5000A.

14

they were nonetheless used in both the 2020 and 2022 elections. It is a reasonable inference from the Amended Petition that the State will continue to use those electronic voting systems in upcoming elections. The mere possibility, alluded to by the Election Commissioner, that the machines could be "properly certified or replaced" before the next election is not enough to defeat the Amended Petition on ripeness grounds. While such a development would likely render this action moot, the Court concludes, absent any serious indication that the Election Commissioner intends to address Reylek's allegations, that the material facts are sufficiently static—and not unknown or changing—to satisfy the ripeness requirement for a declaratory judgment action.

The fixed and recurring nature of elections distinguishes this case from *Guy v. City of Wilmington*,[55] on which the Election Commissioner relies. In *Guy*, a member of the Wilmington City Council sought a declaration that the prior removal *of a different* councilmember had been procedurally improper.[56] The plaintiff claimed the existence of an actual controversy based on his "concern that similar actions by the Council to remove him or other members may be taken in the future[.]"[57] However, there were no facts pleaded to support a claim that the city council was even considering removing Guy or any other council member.[58] Thus, any potential injury to Guy was entirely contingent on future actions that might or might not be taken against him. Here, by contrast, future elections are inevitable, and the Court discerns no value in forcing Reylek to wait until closer to an upcoming election to renew her challenge. To the contrary, "[b]ringing lawsuits on the eve of

---

[55] 2021 WL 471438 (Del. Super. Feb. 9, 2021).
[56] *See id.* at *1.
[57] *Id.* at *4.
[58] *See id.* ("Guy's only claim of injury is that he 'may be subjected to the same acts of exclusion.' Guy further claims that this perceived, futuristic injury that has yet to transpire is because of an 'unlawful removal of a black elected official as an act of systemic racism in support of white supremacy.' Guy offers no facts to support such an assertion." (internal footnotes omitted)).

15

pending elections disrupts the electoral process."[59]  Uncertainty about whether the material facts will change within an election cycle is not always sufficient to defeat an election-related challenge on ripeness grounds.[60]  Accordingly, the Court concludes that insofar as an actual controversy otherwise exists, the matter is ripe for judicial determination.

Ripeness, however, is not the only actual controversy prerequisite in question on the facts alleged here.[61]  The Court concludes, *sua sponte*, that Reylek's asserted "legal right to vote in a verifiably secure way" requires additional scrutiny.  Without a doubt, Reylek has a constitutionally protected right to vote in "free and equal" elections.[62]  Reylek cannot, however, plausibly assert a constitutional violation on the facts alleged.  Construed in context, Reylek's actual asserted right is a statutory

---

[59] *Miller v. Brown*, 462 F.3d 312, 320 (4th Cir. 2006); *see also League of Women Voters of Delaware, Inc. v. Dep't of Elections*, 250 A.3d 922, 933 (Del. Ch. 2020) ("[A]s a practical matter, it is much preferable, to the extent possible, to resolve such disputes before, rather than after, the election. The Plaintiffs' claims are ripe for adjudication.").

[60] *Miller*, 462 F.3d at 320 ("[T]he only true uncertainty is whether another candidate will file for office as contemplated by Section 24.2–526. Although an uncertainty, this procedural step cannot occur until at least March 27, 2007, and as late as seventeen days later. The primary election likely would be resolved before an action brought that late could reach final decision. The case is fit for judicial review despite this uncertainty." (internal footnote omitted)); *cf. Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 300 n.12 (1979) ("There is value in adjudicating election challenges notwithstanding the lapse of a particular election because '[t]he construction of the statute, an understanding of its operation, and possible constitutional limits on its application, will have the effect of simplifying future challenges, thus increasing the likelihood that timely filed cases can be adjudicated *before* an election is held.'" (alteration in original) (quoting *Storer v. Brown*, 415 U.S. 724, 737 n.8 (1974))).

[61] Typically, the Court would consider any argument based on the first three prongs of the actual controversy test waived by the Election Commissioner.  However, the actual controversy requirement is jurisdictional and therefore cannot be waived by agreement or concession of the parties. *See Guy*, 2021 WL 471438, at *3 ("Where a court is asked to grant declaratory judgment, it cannot do so unless there exists an actual controversy, even if the parties agree or consent to conferring jurisdiction upon the Court."); *In re Peierls Family Inter Vivos Trusts*, 59 A.3d 471, 477 (Del. Ch. 2012) ("Inquiry into whether an actual controversy exists is 'jurisdictional in its character, and presents an issue which the court itself [is] bound to raise.'" (alteration in original) (quoting *Stabler v. Ramsay,* 88 A.2d 546, 549 (Del. 1952))), *aff'd*, 77 A.3d 249 (Del. 2013).

[62] Del. Const. art. I, § 3.

16

one, derived from 15 *Del. C.* §§ 5000A and 5001A(c), to cast her vote on a voting system that has been properly certified by the EAC or a designated federal authority. However, a statute governing the conduct of an administrative agency or official does not necessarily create either a private right or a private remedy,[63] and the statutes on which Reylek relies do not expressly provide for enforcement by individual voters. Moreover, the Declaratory Judgment Act does not itself supply a cause of action where a justiciable controversy does not otherwise exist.[64]

This Court's discussion in *Korn v. Wagner* is instructive.[65] In *Korn*, the plaintiff sought declaratory relief where the State of Delaware auditor had allegedly failed to comply with a statutory mandate providing that "the auditor 'shall conduct postaudits of local school district tax funds budget and expenditures annually.'"[66] The Court framed the actual controversy issue as a question of "whether [the auditor's] alleged inaction implicates any of Korn's rights."[67] Relying on the Court of Chancery's discussion in *O'Neill v. Town of Middletown*, the Court concluded

---

[63] *See Oceanport Indus., Inc. v. Wilmington Stevedores, Inc.*, 636 A.2d 892, 899 (Del. 1994) ("Under traditional standards, a law that creates a duty to the general public does not give rise to privately enforceable rights."); *Yeilding v. Council of Ass'n of Unit Owners of Pelican Cove Condo.*, 2022 WL 1161347, at *9 (Del. Ch. Apr. 20, 2022) (holding that "[e]ven assuming the predicate violations" the plaintiffs had failed "to show that they have a private right of action based on statutory or regulatory violations"); *O'Neill v. Town of Middletown*, 2006 WL 205071, at *22 (Del. Ch. Jan. 18, 2006) ("Chapter 91 fails to evince any intent to confer a private right on these Plaintiffs or any private plaintiffs."); *Couch v. Delmarva Power & Light Co.*, 593 A.2d 554, 557 (Del. Ch. 1991) ("I conclude that ALPA creates no rights enforceable by members of the public, and thus, it presents no basis upon which the relief sought could be granted.").
[64] *See Humanigen, Inc. v. Savant Neglected Diseases, LLC*, 238 A.3d 194, 202 (Del. Super. 2020) ("A declaratory judgment is better understood as a remedy than a sort of substantive claim or action."); *cf. Doe v. Coupe*, 2015 WL 4239484, at *4 n.20 (Del. Ch. July 14, 2015) ("Even though 10 *Del. C.* § 6501 enables courts to render declaratory judgments, it does not obviate the need for a real case or controversy. For example, Plaintiffs conceivably might have to base a claim for declaratory relief in the Superior Court on a damages claim against Defendant." (internal citation omitted)).
[65] 2012 WL 5355662 (Del. Super. Sept. 28, 2012).
[66] *Id.* at *3 (quoting 29 *Del. C.* § 2906(f)).
[67] *Id.*

that an implied private right of action analysis was appropriate to determine "whether the statutory text evinced a legislative intent to give the plaintiffs a private right and a private remedy against the government."[68] Finding that the statute was "far too broad and vague to permit a finding of an implied [private] right of action,"[69] the Court held that "the action here is without a controversy and cannot stand under the Declaratory Judgment Act."[70]

Here, as in *Korn*, an actual controversy exists only if the provisions on which Reylek relies, 15 *Del. C.* §§ 5000A and 5001A(c), create an implied private right of action. This is a question of first impression not yet addressed by the parties. Delaware courts generally apply a three-factor test to determine whether an implied private right of action exists under a statute, analyzing "(1) whether the plaintiff is a member of a class for whose especial benefit the statute was enacted; (2) whether there is any indication of legislative intent to grant or deny a private right of action; and (3) whether recognition of an implied private right of action would advance the statute's purpose."[71] The second factor, however, is usually dispositive under contemporary analysis.[72] Thus, since the statutory provisions at issue do not create an express right of action to enforce their requirements, the Court must "interpret the statute [the legislature] has passed to determine whether it displays an intent to create not just a private right but also a private remedy."[73] Since this issue has not been

---

[68] *Id.*
[69] *Id.* (quoting *O'Neill*, 2006 WL 205071, at *21).
[70] *Id.*
[71] *Chance v. Kraft Heinz Foods Co.*, 2018 WL 6655670, *4 (Del. Super. Dec. 17, 2018) (quoting *Rays Plumbing & Heating Serv., Inc. v. Stover Homes, L.L.C.*, 2011 WL 3329384, at *2 (Del. Super. July 26, 2011)).
[72] *See O'Neill*, 2006 WL 205071, at *19 ("[I]n determining the existence of implied rights of action, the focus is now to be placed on the second prong of the three-prong test."); *Rays Plumbing*, 2011 WL 3329384, at *3 ("The second factor of the *Cort* test, which is determinative under the newer *Sandoval* analysis, is more difficult.").
[73] *O'Neill*, 2006 WL 205071, at *21 (alternation in original) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)).

addressed by the parties, the Court requires additional supplemental briefing before ruling on the Election Commissioner's motion to dismiss with respect to Count 1 of the Amended Petition.[74]

## CONCLUSION

For the foregoing reasons, the Election Commissioner's Motion to Dismiss the Amended Petition for Writ of Mandamus is **GRANTED IN PART AND DEFERRED IN PART**. The prayers for relief requesting mandamus relief, Counts 2 through 5 of the Amended Petition, are **DISMISSED**. Decision on Count 1, the declaratory judgment count, is **DEFERRED** pending supplemental briefing on whether 15 *Del. C.* §§ 5000A and 5001A(c) create an implied private right of action. **Reylek and counsel for the Election Commissioner are directed to file supplemental briefing no later than August 8, 2023, and shall have the opportunity to respond to one another's submissions (if they so choose) no later than August 17, 2023.** These submissions shall conform to the length requirements for motions and responses found in Superior Court Civil Rule 78(b) and shall include citations to relevant authority.

**IT IS SO ORDERED.**

_____
Noel Eason Primos, Judge

NEP:tls
*Via File & ServeXpress & U.S.P.S.*
oc:   Prothonotary

---

[74] *See Rays Plumbing & Heating Serv., Inc. v. Stover Homes, L.L.C.*, 2010 WL 8250838, at *4 (Del. Super. Dec. 15, 2010) (reserving decision on a motion to dismiss "until the parties have had an opportunity to fully brief and argue the specific issue of whether there is an implied private right of action").